Scott J. Ferrell, Bar No. 202091
   sferrell@trialnewport.com
Richard H. Hikida, Bar No. 196149
   rhikida@trialnewport.com
David W. Reid, Bar No. 267382
   dreid@trialnewport.com
Victoria C. Knowles, Bar No. 277231
   vknowles@trialnewport.com
NEWPORT TRIAL GROUP
A Professional Corporation
4100 Newport Place Drive, Suite 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff
CUIARA BRAY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| CUIARA BRAY, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>CARTER'S, INC., a Delaware corporation; and DOES 1-10, Inclusive,<br><br>    Defendants. | Case No. CV13-3751 R (MANx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>[Declaration of Scott J. Ferrell and Evidentiary Objections filed concurrently herewith; [Proposed] Order lodged concurrently herewith]<br><br>Date:            August 5, 2013<br>Time:           10:00 a.m.<br>Judge:          Hon. Manuel L. Real<br>Courtroom:    8 |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT ........................................................................................................2

    A. Defendant's Argument that Wisconsin's Substantive Law
    Applies Instead of California Law Is Wrong. ...................................2

        1. Defendant's Reliance on Its So-Called Request for
        Judicial Notice Is Improper. ..............................................2

        2. Based on California's Governmental Interest Inquiry,
        California Law Instead of Wisconsin Law Applies. ...........3

            a) A True Conflict Exists Between California and
            Wisconsin Law. ........................................................4

            b) California's Interest in Protecting the Degree of
            Privacy Afforded to California Residents by
            California Law Would Be More Severely
            Impaired Than the Application of California
            Law Would Impair Any Interests of the State of
            Wisconsin. .................................................................4

                (1) The *Kearney* Court, Applying
                California's Governmental Interest
                Analysis, Made Conclusions Regarding
                the Choice-of-Law Question Regarding
                the Applicability of Penal Code Section
                632. .................................................................5

                (2) The *Kearney* Court Distinguishes the
                Defendant's Argument Regarding the
                So-Called "Extraterritorial" Application
                of California Law as a
                Mischaracterization of a Multistate
                Event. .............................................................6

                (3) The *Kearney* Court Identifies a Principal
                Purpose of California's Invasion-of-
                Privacy Statutory Scheme. ................................7

# <u>TABLE OF CONTENTS</u>(continued)

<u>Page(s)</u>

(4) The *Kearney* Court Expressly Points Out that Section 632.7 and Other Statutes in Related Areas Are Intended to Increase the Protection of California Consumers' Privacy. ........................................................... 7

(5) The *Kearney* Court Addressed the Fact that If California's Consumer-Oriented Privacy Statutes Could Not be Applied Effectively to Out-of-State Companies, But Only to California Companies, the Unequal Application of the Law Might Place Local Companies at a Competitive Disadvantage. .................................................. 9

(6) The *Kearney* Court Determined that Application of California Law Rather than Georgia Law Would Have a Relatively Less Severe Impact on Georgia's Interests Because California Law Is More Protective of Privacy Interests than the Comparable Georgia Privacy Law. .................................................. 11

(7) The *Kearney* Court Determined that Application of California Law Rather than Georgia Law Would Have a Relatively Less Severe Impact on Georgia's Interests Because It Was Practical to Single Out California Calls for Distinct Treatment. .................................................. 11

## TABLE OF CONTENTS(continued)

Page(s)

(8) The *Kearney* Court Determined that Application of California Law Rather than Georgia Law Would Have a Relatively Less Severe Impact on Georgia's Interests Because a Georgia Business Could Simply Disclose at the Outset of a Call Made to or Received From a California Customer that the Call Is Being Recorded. ........................... 12

(9) The *Kearney* Court Expressly Put Out-of-State Companies That Do Business in California on Notice that, With Respect to Future Conduct, They Are Subject to California Law Regarding the Recording of Telephone Conversations Made to or Received From California. ............................. 13

(10) The *Kearney* Court's Analysis of Georgia Law Instead of Wisconsin Law Is a Distinction Without a Difference Because Both States Provide One-Party Consent for Recording Telephone Conversations. ................................. 14

(11) The Fact that Penal Code Section 632 Was the "Specific Provision" at Issue in *Kearney* Is a Distinction Without a Difference. ................................... 14

B. California's Invasion-of-Privacy Law Does Not Violate the Commerce Clause. ........................................ 15

C. Section 632.7 of the Penal Code Does Not Require Proof that a Third Person Intercepted or Received the Communication at Issue. ................................... 20

1. Defendant Has Failed to Cite a Single Case In Support of Its Interpretation that a Third Person Intercepted or Received the Communication at Issue. ...................... 20

# **TABLE OF CONTENTS(continued)**

**Page(s)**

2. Defendant Has Ignored the Case Authority that Directly Contradicts Its Position. ........................................................20

3. The Rule of Lenity Does Not Apply in Construing the Civil Sanction At Issue In This Case. ................................................23

D. The Court Can and Should Infer that Plaintiff Has Adequately Alleged that Plaintiff Suffered an Injury to Her Right to Privacy Under California's Invasion-of-Privacy Statutory Scheme. ..........................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Barker v. Riverside County Office of Education*,
    584 F.3d 821 (9th Cir. 2009) ............................................................24

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*,
    622 F.3d 996 (9th Cir. 2010) ..............................................................3

*Brown v. Defender Sec. Co.*,
    No. CV 12-7319-CAS, 2012 WL 5308964 (C.D. Cal. Oct. 22, 2012) ... 9, 21, 22

*City of Los Angeles v. Lyons*,
    461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)......................................25

*Healy v. The Beer Institute*,
    491 U.S. 324, 109 S. Ct. 2491, 105 L. Ed. 2d 275 ............................... 16, 17, 18

*McCabe v. Intercontinental Hotels Group Resources, Inc.*,
    No. 12-cv-04818 NC, slip op. (N.D. Cal. Dec. 18, 2012) ...................................9

*Pacific Merchant Shipping Ass'n v. Goldstene*,
    639 F.3d 1154 (9th Cir. 2011) ..........................................................16

*Perea v. Humana Pharmacy, Inc.*,
    No. SACV 12-1881-JST, slip op. (C.D. Cal. Jan. 23, 2013) (Tucker, J.) ...........9

*Qwest Communications Corp. v. City of Berkeley*,
    208 F.R.D. 288 (N.D. Cal. 2002).........................................................3

*Roberts v. Wyndham Intern., Inc.*,
    2012 WL 6001459 (N.D. Cal. Nov. 30, 2012) .....................................9

*Sentz v. Euromarket Designs, Inc.*,
    No. EDCV 13-00487-VAP, slip op. (C.D. Cal. May 16, 2013) (Phillips, J.) ......9

*Simpson v. Best Western Int'l, Inc.*,
    No. 3:12-cv-04672-JCS, 2012 WL 5499928 (N.D. Cal. Nov. 13, 2012) 9, 22, 23

*Simpson v. Ramada Worldwide, Inc.*,
    No. 12-CV-5029-PSG, 2012 WL 5988644 (N.D. Cal. Nov. 29, 2012) .....1, 9, 22

# <u>TABLE OF AUTHORITIES(CONTINUED)</u>

**Page(s)**

*Simpson v. Vantage Hospitality Group, Inc.*,
　　No. 12-cv-04814-YGR, 2012 WL 6025772 (N.D. Cal. Dec. 4, 2012) ... 9, 21, 22

*Starr v. Baca*,
　　652 F.3d 1202 (9th Cir. 2011) ........................................................................25

*Sullivan v. Oracle Corp.*,
　　662 F.3d 1265 (9th Cir. 2011) ........................................................................15

*Zephyr v. Saxon Mort. Servs., Inc.*,
　　873 F. Supp. 2d 1223 (E.D. Cal. 2012) ........................................... 17, 18, 19, 20

**State Cases**

*Bernhard v. Harrah's Club*,
　　16 Cal. 3d 313, 320, 128 Cal. Rptr. 215, 546 P.2d 719 (1976) ...........................4

*Flanagan v. Flanagan*,
　　[27 Cal. 4th 766, 117 Cal. Rptr. 2d 574, 41 P.3d 575 (2002)] ............................1

*Gruenberg v. Aetna Ins. Co.*,
　　9 Cal. 3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973) .................................19

*Kearney v. Solomon Smith Barney, Inc.*,
　　39 Cal. 4th 95, 137 P.3d 914, 45 Cal. Rptr. 3d 730 (2006) ....................... *passim*

**State Statutes**

§ 632 of the California Penal Code ................................................................. *passim*

§ 632.7 of the California Penal Code .............................................................. *passim*

§ 637.2 of the California Penal Code .............................................................. *passim*

California's Invasion-of-Privacy Law ...................................................................15

California's Privacy Act.......................................................................................18

Wisconsin Stat. Ann. § 968.31(2)(c) ......................................................................4

# TABLE OF AUTHORITIES(CONTINUED)

**Page(s)**

**Rules**

Fed. R. Civ. P. 56(d) ........................................................................1, 3

Rule 12(b)(6) ................................................................... 1, 19, 25

**Constitutional Provisions**

Cal. Const., Article I, § 1 .................................................................25

California Constitution .......................................................................25

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Having been unable to timely file a Rule 12(b)(6) motion to dismiss for failure to state a claim, Defendant has filed a Motion for Judgment on the Pleadings, which requires the exclusion of extrinsic facts.  Defendant's Motion brazenly ignores that requirement, and instead seeks to rely upon extrinsic facts set forth in a purported Request for Judicial Notice, which should be stricken.  Plaintiff has propounded discovery regarding each of the topics set forth in Defendant's Request for Judicial Notice.  Thus, to the extent that the Court decides to convert Defendant's Motion into a Motion for Summary Judgment, Defendant's Motion is premature under Fed. R. Civ. P. 56(d).

Moreover, Defendant's Motion is wrong on the merits.  First, under California's governmental interest analysis, California law, *i.e.*, sections 632.7 and 637.2 of the California Penal Code,[1] instead of Wisconsin law applies.  California's interest in protecting the degree of privacy afforded to California residents by California law would be more severely impaired than the application of California law would impair any Wisconsin interests.  Indeed, the California Supreme Court has engaged in a *persuasive* choice of law analysis regarding a different statute within California's invasion-of-privacy statutory scheme.  *Kearney v. Solomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-28, 137 P.3d 914, 45 Cal. Rptr. 3d 730 (2006).  Significantly, Defendant has failed to proffer anything that indicates that Wisconsin law is intended to allow a

---

[1]   Unlike section 632 of the California Penal Code, "Section 632.7 . . . does not require that the communication be confidential. As the California Supreme Court noted in *Flanagan v. Flanagan*, [27 Cal. 4th 766, 776, 117 Cal. Rptr. 2d 574, 41 P.3d 575 (2002)] Section 632.7 provides protection that is broader than Section 632 because it protects any wireless phone conversation, not just confidential communications. Plaintiff, therefore, is not obligated to allege whether [Plaintiff] believed the phone conversations [Plaintiff] had with [the defendant's] call centers were confidential or whether that belief was objectively reasonable based on [Plaintiff's] knowledge—or lack thereof—that businesses regularly record their calls with customers." *Simpson v. Ramada Worldwide, Inc.*, No. 12-CV-5029-PSG, 2012 WL 5988644, at *3 (N.D. Cal. Nov. 29, 2012).

business to _secretly_ record its customers' telephone calls.  Thus, any such impairment would represent only a relatively minor impairment of Wisconsin's interests.   In contrast, if California law is not applied to this case, this would substantially undermine the privacy interest that section 632.7 and the rest of California's statutory scheme was intended to protect.  By failing to apply consumer-oriented privacy statutes enacted in California to out-of-state companies, such unequal application of the law very well might place local companies at a competitive disadvantage with their out-of-state counterparts.  That is, California companies that are required to comply with California law would be disadvantaged.

Second, California invasion-of-privacy law does not violate the dormant Commerce Clause.  The California Supreme Court and a federal district court opinion have collectively provided a persuasive analysis as to why the strict scrutiny test does not apply, and why the effects of § 632.7 are incidental to interstate commerce such that the burden is so outweighed by the benefit to California residents such that section 632.7 is not unreasonable or irrational.

Third, Defendant ignores the ample case authority indicating that a section 632.7 claim is not limited to a third party.  In that regard, Defendant's contention that the rule of lenity applies is wrong.  What's at issue in this case is a civil sanction that provides a private right of action, not a penal sanction.

Fourth, Defendant has failed to properly interpret Plaintiff's allegations as pleading an injury to Plaintiff's right to privacy.  Accordingly, Defendant's Motion for Judgment on the Pleadings should be denied.

## II.   ARGUMENT

### A.   Defendant's Argument that Wisconsin's Substantive Law Applies Instead of California Law Is Wrong.

#### 1.   Defendant's Reliance on Its So-Called Request for Judicial Notice Is Improper.

Defendant contends that the substantive law of Wisconsin, which is a one-party

consent state unlike California, is applicable to this case.  Defendant contends that its conduct was and is permissible under Wisconsin law.  In support, Defendant relies on a Request for Judicial Notice (RJN).  (ECF No. 8-2.)

Defendant's reliance on its RJN is improper.  Defendant's RJN violates the rule that a court may consider only allegations made in the complaint and the answer on a motion for judgment on the pleadings.  *Qwest Communications Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002) ("extrinsic factual material may not be taken into account").

Plaintiff has not had an opportunity to conduct discovery as to the so-called facts "from sources whose accuracy cannot reasonably be questioned."  (RJN at 2:2-23.)

To the extent that the Court converts the instant Motion into a motion for summary judgment and considers Defendant's RJN, Plaintiff submits that Defendant's RJN is objectionable.  Plaintiff is entitled to conduct discovery as to Plaintiff's representation in its RJN, which is not even authenticated by a sworn declaration under penalty of perjury.  Plaintiff has filed a declaration of counsel in compliance with Rule 56(d).  (Ferrell Decl. ¶¶ 2-3.)

## 2. <u>Based on California's Governmental Interest Inquiry, California Law Instead of Wisconsin Law Applies.</u>

"A federal court sitting in diversity applies the forum state's choice of law rules." *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010).  "[I]n analyzing a choice-of-law issue, California courts apply the so-called governmental interest analysis, under which a court carefully examines the governmental interests or purposes served by the applicable statute or rule of law of each of the affected jurisdictions to determine whether there is a 'true conflict.'" *Kearney v. Solomon Smith Barney, Inc.*, 39 Cal. 4th 95, 100, 137 P.3d 914, 45 Cal. Rptr. 3d 730 (2006).  "If such a conflict is found to exist, the court analyzes the jurisdictions' respective interests to determine which jurisdiction's interests would be more severely impaired if that jurisdiction's law were not applied in the particular

context presented by the case." *Id.* Such analysis is referred to as the "comparative impairment" approach, which seeks to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state. *Id.* at 112, 123 (citing *Bernhard v. Harrah's Club*, 16 Cal. 3d 313, 320, 128 Cal. Rptr. 215, 546 P.2d 719 (1976)).

**a)   A True Conflict Exists Between California and Wisconsin Law.**

It is undisputed that a true conflict exists between California and Wisconsin law. Although California is a two-party consent state, Cal. Penal Code § 632.7(a), Wisconsin is a one-party consent state. Wisconsin Stat. Ann. § 968.31(2)(c).

**b)   California's Interest in Protecting the Degree of Privacy Afforded to California Residents by California Law Would Be More Severely Impaired Than the Application of California Law Would Impair Any Interests of the State of Wisconsin.**

The conflicts of law analysis addressed via the instant Motion has been previously addressed by the California Supreme Court in a very similar action.

In *Kearney v. Solomon Smith Barney, Inc.*, 39 Cal. 4th 95, 100, 137 P.3d 914, 45 Cal. Rptr. 3d 730 (2006), the complaint alleged that Salomon Smith Barney ("SSB"), a large, nationwide brokerage firm that does business in California, *id.* at 99, had repeatedly recorded telephone conversations with California clients without the clients' knowledge or consent, *id.* In particular, the Complaint alleged that SSB unlawfully and intentionally recorded telephonic conversations to and from SSB's Atlanta, Georgia office brokers involving the two named plaintiffs (who were clients of SSB), while in California, and other clients of SSB, who were residents of California and who were unaware that their conversations were being recorded and did not give consent to such recording. *Id.* at 102. The complaint alleged that SSB did not disclose that it was recording such conversations. *Id.* The complaint alleged a cause of action under

section 637.2 of the California Penal Code.

**(1)** **The *Kearney* Court, Applying California's Governmental Interest Analysis, Made Conclusions Regarding the Choice-of-Law Question Regarding the Applicability of Penal Code Section 632.**

The California Supreme Court addressed a choice-of-law question of whether to apply California's privacy statute generally prohibiting any person from recording a telephone conversation without the consent of all parties to the conversation or the comparable Georgia statute, the latter of which did not prohibit the recording of a telephone conversation when the recording is made with the consent of one party to the conversation. *Id.* at 99.

In applying California's governmental interest analysis, the *Kearney* court stated:

"[W]e conclude that this case presents a true conflict between California and Georgia law, and that, as a general matter, the failure to apply California law in this context would impair California's interest in protecting the degree of privacy afforded to California residents by California law more severely than the application of California law would impair any interests of the State of Georgia."

*Kearney*, 39 Cal. 4th at 100.

The *Kearney* court added:

"[I]n light of the substantial number of businesses operating in California that maintain out-of-state offices or telephone operators, a resolution of this conflict permitting all such businesses to regularly and routinely record telephone conversations made to or from California clients or consumers without the clients' or consumers' knowledge or consent would significantly impair the privacy policy guaranteed by California law, and potentially would place local California businesses (that would continue to be subject to California's protective privacy law) at an unfair competitive

disadvantage vis-à-vis their out-of-state counterparts. At the same time, application of California law will not have a significant detrimental effect on Georgia's interests as embodied in the applicable Georgia law, because applying California law (1) will not adversely affect any privacy interest protected by Georgia law, (2) will affect any those business telephone calls in Georgia that are made to or are received from California clients, and (3) with respect to such calls, will not prevent a business located in Georgia from implementing or maintaining a practice of recording *all* such calls, but will require only that the business *inform* its clients or customers, at the outset of the call, of the company's policy of recording such calls."

*Kearney*, 39 Cal. 4th at 100.

> **(2)** **The *Kearney* Court Distinguishes the Defendant's Argument Regarding the So-Called "Extraterritorial" Application of California Law as a Mischaracterization of a Multistate Event.**

Although the defendant in *Kearney* argued that application of Penal Code section 632[2] to the facts at issue would constitute a disfavored "extraterritorial" application of that statute, the *Kearney* court rejected that characterization of the analysis as follows:

"Interpreting [section 632] to apply to a person who, while outside California, secretly records what a California resident is saying in a confidential communication *while he or she is within California*, however, cannot accurately be characterized as an unauthorized *extraterritorial* application of the statute, but more reasonably is viewed as an instance of applying the statute to a multistate event in which a crucial element—the confidential communication by the California resident—occurred *in*

---

[2] Penal Code section 632 is *not* at issue in the instant action. Rather, Penal Code section 632.7 is the specific statutory provision that Defendant in this case is alleged to have violated. (Compl. ¶ 21.)

*California*.  The privacy interest protected by the statute is no less directly and immediately invaded when a communication *within California* is secretly and contemporaneously recorded from outside the state than when this action occurs within the state.  A person who secretly and intentionally records such a conversation from outside the state effectively acts within California in the same way a person effectively acts within the state by, for example, intentionally shooting a person in California from across the California-Nevada border.  Because there can be no question but that the principal purpose of section 632 is to protect the privacy of confidential communications of California residents *while they are in California*, we believe it is clear that section 632 was intended, and reasonably must be interpreted to apply in this setting."

*Kearney*, 39 Cal. 4th at 119-20 (internal citations omitted) (emphasis in original).

The *Kearney* court drew a distinction between the defendant's extraterroriality cases by noting that "here [defendant's] employees allegedly acted to record conversations that were occurring contemporaneously in California."  *Id.* at 120.

### (3)   The *Kearney* Court Identifies a Principal Purpose of California's Invasion-of-Privacy Statutory Scheme.

In considering the degree of impairment of the respective statutes, the *Kearney* court noted that the "object of protecting individuals in California from the secret recording of confidential communications by or at the behest of another party to the communication was one of the principal purposes underlying the 1967 invasion-of-privacy enactment."  *Kearney*, 39 Cal. 4th at 124.

### (4)   The *Kearney* Court Expressly Points Out that Section 632.7 and Other Statutes in Related Areas Are Intended to Increase the Protection of California Consumers' Privacy.

The *Kearney* court also addressed the fact that the California statute at issue was

not "ancient" or rarely used or relied upon. *Id.* at 124-25. "On the contrary, California decisions repeatedly have invoked and vigorously enforced the provisions of section 632 and have looked to the policy embodied in the provision in analyzing invasion-of-privacy claims in related contexts." *Id.* at 125 (internal citations omitted).

Significantly, the *Kearney* court expressly pointed to the specific provision at issue in the instant action, section 632.7, as an example of how the California Legislature in recent years has continuously and repeatedly added new legislation in related areas in order to increase the protection of California consumers' privacy in the face of a perceived escalation in the encroachment upon such interests caused by various business practices:

> "[I]n recent years the California Legislature has continued to add provisions to and make modifications of the invasion-of-privacy statutory scheme here at issue (see, for example, Pen. Code, §§ 632.5-632.7 [cordless or cellular telephones], 633.6 [permitting recording by victims of domestic violence upon court order]) and in addition repeatedly has enacted new legislation in related areas *in an effort to increase the protection of California consumers' privacy* in the face of a perceived escalation in the impingement upon privacy interests caused by various business practices. In addition, California's explicit constitutional privacy provision (Cal. Const., art. I, § 1) was enacted in part specifically to protect Californians from overly intrusive business practices that were seen to pose a significant and increasing threat to personal privacy.
>
> Thus, we believe that California must be viewed as having a strong and continuing interest in the full and vigorous application of the provisions of section 632 prohibiting the recording of telephone conversations without the knowledge or consent of *all* parties to the conversation."

*Kearney*, 39 Cal. 4th at 125 (internal citations omitted) (first emphasis added).[3]

**(5)  The *Kearney* Court Addressed the Fact that If California's Consumer-Oriented Privacy Statutes Could Not be Applied Effectively to Out-of-State Companies, But Only to California Companies, the Unequal Application of the Law Might Place Local Companies at a Competitive Disadvantage.**

The *Kearney* court next analyzed the negative impact that a failure to apply section 632 would have on the protection afforded by the statute as follows:

"We also believe that the failure to apply section 632 in the present context would substantially undermine the protection afforded by the statute.  Many companies who do business in California are national or international firms that have headquarters, administrative offices, or—in view of the recent trend toward outsourcing—at least telephone operators located outside of California.  *If businesses could maintain a regular practice of secretly recording all telephone conversations with their California clients or customers in which the business employee is located*

---

[3]  Section 632.7 has withstood numerous recent challenges.  *See, e.g., Sentz v. Euromarket Designs, Inc.*, No. EDCV 13-00487-VAP (SPx), slip op. at 5-8 (C.D. Cal. May 16, 2013) (Phillips, J.) (denying a motion to dismiss a claim under Penal Code section 632.7);  *Perea v. Humana Pharmacy, Inc.*, No. SACV 12-1881-JST (ANx), slip op. at 6-13 (C.D. Cal. Jan. 23, 2013) (Tucker, J.) (denying a motion to dismiss against claims brought under both section 632 and 632.7 of the California Penal Code); *McCabe v. Intercontinental Hotels Group Resources, Inc.*, No. 12-cv-04818 NC, slip op. at 3:6-10:4 (N.D. Cal. Dec. 18, 2012) (denying a motion to dismiss a claim under Penal Code section 632.7); *Simpson v. Vantage Hospitality Group, Inc.*, No. 12-cv-04814-YGR, 2012 WL 6025772, at *5-6 (N.D. Cal. Dec. 4, 2012) (same); *Roberts v. Wyndham Intern., Inc.*, 2012 WL 6001459, at *4-*6 (N.D. Cal. Nov. 30, 2012) (denying a motion to dismiss against claims brought under both section 632 and 632.7 of the California Penal Code); *Simpson v. Ramada Worldwide, Inc.*, No. 12-CV-5029-PSG, 2012 WL 5988644, at *3-*4 (N.D. Cal. Nov. 29, 2012) (denying a motion for a more definite statement regarding a claim under Penal Code section 632.7); *Simpson v. Best Western Int'l, Inc.*, No. 3:12-cv-04672-JCS, 2012 WL 5499928, at *5-*9 (N.D. Cal. Nov. 13, 2012) (denying a motion to dismiss a claim under Penal Code section 632.7); *Brown v. Defender Sec. Co.*, No. CV 12-7319-CAS (PJWx), 2012 WL 5308964, at *2-*5 (C.D. Cal. Oct. 22, 2012) (denying a motion to dismiss against claims brought under both section 632 and 632.7 of the California Penal Code).

*outside of California, that practice would represent a significant inroad into the privacy interest that the statute was intended to protect.*  As noted above, *an out-of-state company that does business in another state is required, at least as a general matter, to comply with the laws of a state and locality in which it has chosen to do business.*  As this court determined in *Bernhard*, *supra*, 16 Cal. 3d 313, 322-323, 128 Cal. Rptr. 215, 546 P.2d 719, with regard to the need to apply California law relating to the liability of tavern owners to the out-of-state tavern owner at issue in that case, the failure to apply California law in the present context seriously would undermine the objective and purpose of the statute."

*Kearney*, 39 Cal. 4th at 126 (internal citations omitted) (emphasis added).

The *Kearney* court made it clear that its analysis was not limited to section 632 alone as follows:

"Moreover, if section 632—*and, by analogy, other similar consumer-oriented privacy statutes that have been enacted in California*—could not be applied effectively to out-of-state companies but only to California companies, the unequal application of the law very well *might place local companies at a competitive disadvantage with their out-of-state counterparts.*  To the extent out-of-state companies may utilize such undisclosed recording to further their economic interests—perhaps in selectively disclosing recordings when disclosure serves the company's interest, *but not volunteering the recordings' existence (or quickly destroying them) when they would be detrimental to the company— California companies that are required to comply with California law would be disadvantaged.*  By contrast, application of section 632 to all companies in their dealings with California residents would treat each company equally with regard to California's concern for the privacy of the state's consumers.

In sum, we conclude that the failure to apply California law in the present context would result in a significant impairment of California's interests."

*Kearney*, 39 Cal. 4th at 126 (emphasis added).

**(6)** **The *Kearney* Court Determined that Application of California Law Rather than Georgia Law Would Have a Relatively Less Severe Impact on Georgia's Interests Because California Law Is More Protective of Privacy Interests than the Comparable Georgia Privacy Law.**

The *Kearney* court determined that application of California law rather than Georgia law would have a relatively less severe effect on Georgia's interests for several reasons. *Kearney*, 39 Cal. 4th at 126. First, the *Kearney* court noted that "because California law, with regard to the particular matter here at issue, is more protective of privacy interests than the comparable Georgia privacy statute, the application of California law would not violate any privacy interest protected by Georgia law." *Id.* at 126-27.

**(7)** **The *Kearney* Court Determined that Application of California Law Rather than Georgia Law Would Have a Relatively Less Severe Impact on Georgia's Interests Because It Was Practical to Single Out California Calls for Distinct Treatment.**

The *Kearney* court also noted that "with respect to businesses in Georgia that record telephone calls, California law would apply only to those telephone calls that are made to or received from California, not to all telephone calls to and from such Georgia businesses." *Id.* at 127. Significantly, the *Kearney* court addressed the practicability of singling out California calls for distinct treatment as follows:

"In considering the practicability of singling out California calls for distinct treatment, there would appear to be little question that it would be feasible for a business to identify those calls that its own employees *are making to* current or potential California clients. Similarly, with regard to

calls *received by* a business in Georgia, it appears likely that technical tools—such as 'caller ID'—are available that readily would make it possible to identify which calls received by the Georgia office are coming from California, and, *even in the absence of such technological devices, there would appear to be no reason why an SSB employee, when answering a call, could not simply inquire whether the client is calling from*.   Thus, application of California law would appear to affect only those telephone calls to or from California."

*Kearney*, 39 Cal. 4th at 127 (first and second emphasis in original and third emphasis added).

> **(8)** **The *Kearney* Court Determined that Application of California Law Rather than Georgia Law Would Have a Relatively Less Severe Impact on Georgia's Interests Because a Georgia Business Could Simply Disclose at the Outset of a Call Made to or Received From a California Customer that the Call Is Being Recorded.**

Finally, the *Kearney* court noted that "if a Georgia business discloses at the outset of a call made to or received from a California customer that the call is being recorded, the parties to the call will not have a reasonable expectation that the call is not being recorded and the recording would not violate section 632."  *Kearney*, 39 Cal. 4th at 127. The *Kearney* court addressed the fact that the application of California law would not thwart the interests sought to be protected by Georgia law insofar as Georgia law was intended to protect the right of a business to record conversations when it has a legitimate business justification for doing so, and was not interested in protecting a business's ability to *secretly* record its customer telephone calls:

"California law does not totally prohibit a party to a telephone call from recording the call, but rather prohibits only the *secret* or *undisclosed*

recording of telephone conversations, that is, the recording of such calls without the knowledge of all parties to the call.  Thus, if a Georgia business discloses at the outset of a call made to or received from a California customer that the call is being recorded, the parties to the call will not have a reasonable expectation that the call is not being recorded and the recording would not violate section 632. . . . Although the application of California law would impair Georgia's interests to the extent Georgia law is intended to protect a business's ability *secretly* to record its customers' telephone calls, we believe that, particularly as applied to a business's blanket policy of routinely recording telephone calls to and from California customers, this consequence would represent only a *relatively minor impairment of Georgia's interests*."

*Kearney*, 39 Cal. 4th at 127-28 (final emphasis added).

In other words, in reality, the only potential impairment of Georgia's interest in applying its law existed in the narrow context in which a business sought to *secretly* record its customers' telephone calls.  If a business had no interest in *secretly* doing so, which the *Kearney* court inferred as the vast majority of situations, then such Georgia business merely had to provide a disclosure of the recording at the outset of the call made to or received from a California customer that the call is being recorded.

**(9)   The *Kearney* Court Expressly Put Out-of-State Companies That Do Business in California on Notice that, With Respect to Future Conduct, They Are Subject to California Law Regarding the Recording of Telephone Conversations Made to or Received From California.**

Although the *Kearney* court allowed the case to go forward with respect to the request for injunctive relief, but not as to monetary damages or restitution based on the defendant's past conduct, the *Kearney* court explained that "prior to [its] resolution of

this case," "it would have been reasonable for a business entity" "to be uncertain as to which state's law—Georgia's or California's—would be applicable in this context," *Kearney*, 39 Cal. 4th at 101.   Significantly, the *Kearney* court made it clear that in future cases, California law should be applied in an unrestrained manner. *Id.* at 130-31. The *Kearney* court stated:

> "In light of our decision, of course, out-of-state companies that do business in California now are on notice that, with regard to future conduct, they are subject to California law with regard to the recording of telephone conversations made to or received from California, and that the full range of civil sanctions afforded by California law may be imposed for future violations."

*Id.* at 130-31.

**(10)**   **The *Kearney* Court's Analysis of Georgia Law Instead of Wisconsin Law Is a Distinction Without a Difference Because Both States Provide One-Party Consent for Recording Telephone Conversations.**

The fact that the *Kearney* court analyzed Georgia law instead of Wisconsin law is a distinction without a difference in terms of its application to the instant action. Georgia and Wisconsin law are the same insofar as they provide one-party consent for the recording of telephone conversations.

Indeed, as in *Kearney*, there is nothing that indicates that Wisconsin law is intended to allow a business to *secretly* record its customers' telephone calls.  Thus, any such impairment "would represent only a *relatively minor impairment of [Wisconsin's] interests*."  *Kearney*, 39 Cal. 4th at 128 (emphasis added).

**(11)**   **The Fact that Penal Code Section 632 Was the "Specific Provision" at Issue in *Kearney* Is a Distinction Without a Difference.**

In addition, the fact that Penal Code section 632 was the "specific provision" of

the applicable invasion-of-privacy statutory scheme at issue in *Kearney*, 39 Cal. 4th at 103 n.1, whereas Penal Code section 632.7 is the "specific provision" at issue in the instant action, (Compl. ¶ 21), is yet another distinction without a difference.   What matters is the fact that the identical "invasion-of-privacy statutory scheme" was at issue in both cases.   That is, both the *Kearney* court and the instant action are both addressing a civil cause of action under section 637.2 of the California Penal Code.   *Compare Kearney*, 39 Cal. 4th at 103 n.1, *with* (Compl. ¶ 22).

Moreover, by repeated references to statutes other than Penal Code section 632 including section 632.7, *Kearney*, 39 Cal. 4th at 125-26, the *Kearney* court made it clear that its choice of law analysis was intended to interpreted broadly to cover California's consumer-oriented privacy statutes that have been enacted in California.   *Id.* at 126.

Given that it is beyond dispute that section 632.7 has the same purpose of protecting the right of privacy of Californians, which serves as the basis for section 632,[4] *Kearney*, 39 Cal. 4th at 119, the choice of law analysis in *Kearney* is equally applicable to the instant case involving section 632.7.

Based on the foregoing, Wisconsin law does not apply.

**B.**   **California's Invasion-of-Privacy Law Does Not Violate the Commerce Clause.**

Defendant contends that the application of California's invasion-of-privacy law would violate the Commerce Clause.

Under the dormant Commerce Clause, "[i]f a statute 'regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'"   *Sullivan v. Oracle Corp.*,

---

[4]   In choosing to apply California law, the *Kearney* court noted that the statute's purpose—"'to protect the right of privacy of the people of this state,'" 39 Cal. 4th at 119 (quoting Cal. Pen. Code § 630)—"certainly supports application of the statute in a setting in which a person outside California records, without the Californian's knowledge or consent, a telephone conversation of a California resident who is within California." *Id.*

662 F.3d 1265, 1271 (9th Cir. 2011) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970)).  In other words, "there are two broad categories of state regulations burdening interstate commerce:  (1) those that directly burden interstate commerce or otherwise discriminate against out-of-state interests; and (2) those that incidentally burden commerce." *Pacific Merchant Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1177 (9th Cir. 2011).  Those that fall into the first category are subject to strict scrutiny and are generally struck down, while those falling into the second category are subject to a balancing test.  *Id.*  "Under this balancing test, regulations may violate the Commerce Clause if the burdens they impose so outweigh the putative benefits so as to render the regulations unreasonable or irrational." *Id.*

As Defendant is aware, the California Supreme Court has previously addressed this precise issue in *Kearney*, 39 Cal. 4th at 106, and rejected the assertion that California's invasion-of-privacy statutory scheme violates the Commerce Clause.

In *Kearney*, the California Supreme Court rejected an identical argument that the federal Commerce Clause would be violated by applying California law in a similar setting in which a participant of the telephone calls at issue was located outside of California.  First, the *Kearney* court rejected SSB's reliance upon the U.S. Supreme Court's decision in *Healy v. The Beer Institute*, 491 U.S. 324, 109 S. Ct. 2491, 105 L. Ed. 2d 275, which contained language indicating that the Commerce Clause "precludes the application of a state statute to commerce that takes place *wholly outside the State's borders*, whether or not the commerce has effects within the State." *Kearney*, 39 Cal. 4th at 106-07 (quoting *Healy*, 491 U.S. at 336) (emphasis added).  Significantly, the *Kearney* court noted that the quotation from *Healy* was not applicable to the case at issue because "the occurrences here at issue quite clearly did not take place 'wholly outside [California's] borders.'" *Kearney*, 39 Cal. 4th at 106-07.

In addition, the *Kearney* court noted that the rest of the quoted sentence in *Healy* stated that "a State may not adopt legislation that has the practical effect of establishing 'a scale of prices for use in other states.'" *Kearney*, 39 Cal. 4th at 107.  The *Kearney*

court explained that "the decision in *Healy* addressed the validity of a state statute that purported to regulate a business entity's *pricing practices* in the forum state with reference to the *prices* charged by the entity in other states, and found the statute violative of the commerce clause because of the inevitable effect that the statute would have on the *prices* charged by the entity in its sales to residents in other states." *Id.* (emphasis added). Needless to say, the California statutory scheme at issue in *Kearney* had nothing to do with pricing practices.

The *Kearney* court noted, "On its face, application of the California law here at issue would affect only a business's undisclosed recording of telephone conversations with clients or consumers in California and would not compel any action or conduct of the business with regard to conversations with non-California clients or consumers." *Id.* at 107.

The *Kearney* court also noted, "Although SSB may attempt to demonstrate, at a later stage in the litigation, that application of the California statute would pose an undue and excessive burden on interstate commerce by establishing that it would be impossible or infeasible for SSB to comply with the California statute without altering its conduct with regard to its non-California clients and that the burden that would be imposed upon it 'is clearly excessive in relation to the putative local benefits,' SSB clearly cannot prevail on such a theory at the demurrer stage of the proceeding." *Id.* (internal citation omitted).

Although Defendant correctly points out that the *Kearney* court's decision is not controlling in determining the constitutionality of California's invasion-of-privacy statutory scheme, its constitutional analysis is persuasive, *Zephyr v. Saxon Mort. Servs., Inc.*, 873 F. Supp. 2d 1223, 1230 (E.D. Cal. 2012), and its determinations as to the meaning and application of the statutory provisions within California's invasion-of-privacy statutory scheme are controlling.

The court's analysis in *Zephyr v. Saxon Mort. Servs., Inc.*, 873 F. Supp. 2d 1223 (E.D. Cal. 2012), provides further guidance. In *Zephyr*, the district court, in a published

decision, agreed with the *Kearney* court's conclusion that *Healy* was inapplicable with respect to the constitutionality of California's invasion-of-privacy statutory scheme given that California's invasion-of-privacy statutory scheme consisting of sections 632 and 632.7 of the Penal Code do not regulate conduct that occurs "in entirely another state" given that the plaintiff's calls at issue in *Zephyr* are made to California residents' telephones and the conversations are with California residents.  *Id.* at 1230-31.

In addition, the *Zephyr* court noted:

"[T]he purpose of California's Privacy Act does not appear to be to regulate out-of-state commerce or conduct, but to protect California residents from having their conversations recorded by either instate or out-of-state callers without all parties' consent.  There does not appear to be any differential treatment of in-state versus out-of-state callers:  §§ 632 and 632.7 apply equally to in-state and inter-state calls that are recorded.  The effects of §§ 632 and 632.7 therefore appear to be *<u>incidental</u>* to interstate commerce and strict scrutiny does not apply.

[Defendant] argues that even if the effect of §§ 632 and 632.7 on interstate commerce is incidental, the balance still tips in its favor because the burden on out-of-state businesses that record calls with California residents outweighs whatever privacy benefit is received by California residents, but this is a legal conclusion couched as a factual statement:  [Defendant] does not present any evidence that would support this conclusion.  Specifically, [Defendant] has not demonstrated any particular burden that results from complying with California's all-consent recording rules, much less how that burden outweighs the privacy rights of California residents.  As yet, [Defendant] has presented no evidence related to the cost of complying with California's all consent laws."

*Zephyr*, 873 F. Supp. 2d at 1231 (emphasis added) (internal citations omitted).

The *Zephyr* court concluded:

"In sum, the Court holds that the application of §§ 632 and 632.7 to [defendant's] recorded calls made from Texas to California customers does

not violate the dormant Commerce clause.  On balance, the burden Section 632 imposes on interstate commerce appears to be incidental and, at this stage of the litigation, [defendant] has presented no evidence of any particular burden that would compel this Court to conclude that the burden on interstate commerce so outweighed the benefit to California residents as to render §§ 632 and 632.7 unreasonable and irrational."

*Zephyr*, 873 F. Supp. 2d at 1231-32.

The thoughtful analysis in both *Kearney* and *Zephyr* is persuasive.  The burden that California's invasion-of-privacy statutory scheme, including section 632.7 of the Penal Code, imposes on interstate commerce is incidental.  There is no differential treatment of in-state versus out-of-state callers:  § 632.7 applies equally to in-state and inter-state calls that are recorded.  Because the effects of § 632.7 appear to be *incidental* to interstate commerce, strict scrutiny does not apply.  *Zephyr*, 873 F. Supp. 2d at 1230.

As for the balancing test, Defendant has presented no admissible evidence of any particular burden that would compel this Court to conclude that the burden on interstate commerce so outweighed the benefit to California residents as to render section 632.7 "unreasonable and irrational."  *Zephyr*, 873 F. Supp. 2d at 1232.  Indeed, the procedural posture of the instant Motion is equivalent to the demurrer stage of the proceeding at issue in *Kearney* and the Rule 12(b)(6) motion to dismiss stage in *Zephyr*.   Material facts alleged in the complaint are treated as true for the purpose of ruling on the demurrer.  *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 572, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973).  Thus, in both situations, the allegations of the complaint were required to be taken as true and extrinsic evidence was not permissible.

"[Defendant] has not demonstrated any particular burden that results from complying with California's all-consent recording rules, much less how that burden outweighs the privacy rights of California residents.  As yet, [Defendant] has presented no evidence related to the cost of complying with California's all consent laws."

*Zephyr*, 873 F. Supp. 2d at 1231.

Given that it's clear that Defendant is not making a fact-based argument in support of its Commerce Clause argument, this begs the question as to whether Defendant can prevail as a matter of law. There is no case authority that Defendant has cited that requires that this Court find that the instant action violates the Commerce Clause as a matter of law. Indeed, the case authority on this precise issue is to the contrary of Defendant's position. *Zephyr*, 873 F. Supp. 2d at 1231-32. Defendant's Commerce Clause argument should be denied.

**C.**     **Section 632.7 of the Penal Code Does Not Require Proof that a Third Person Intercepted or Received the Communication at Issue.**

Penal Code section 632.7 provides that a fine or imprisonment shall be imposed against "[e]very person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone."

**1.**     **Defendant Has Failed to Cite a Single Case In Support of Its Interpretation that a Third Person Intercepted or Received the Communication at Issue.**

Although Defendant contends that it is entitled to judgment on the pleadings because "Plaintiff does not allege that anyone other than a Carter's employee named 'Linda' intercepted or received her call without her consent," (Def.'s Mem. at 11:11-12), Defendant cites no case authority in support of its position that section 632.7 is limited to third parties.

**2.**     **Defendant Has Ignored the Case Authority that Directly Contradicts Its Position.**

Defendant has inexplicably ignored the published case authority addressing the

question whether section 632.7 is limited to third parties.  For example, in *Brown v. Defender Security Co.*, No. 12–7319-CAS (PJWx), 2012 WL 5308964 (C.D. Cal. Oct. 22, 2012) (Snyder, J.), the court found it "clear and unambiguous" from the text of the statute that "§ 632.7 prevents a *party* to a cell phone conversation from recording it without the consent of all parties to the conversation." *Id.* at \*5 (emphasis added).  The court reasoned that "as a matter of common usage, the participants in a conversation 'receive' communications from each other." *Id.* The court also found support in the disjunctive "or" between the words "intercepts" and "receives," and held that because "'intercepts' is most naturally interpreted to refer to conduct whereby an unknown party secretly accesses a conversation, 'receives' is naturally read to refer to something other than access to a conversation by an unknown interloper." *Id.* Because the court believed the language in § 632.7 to be "clear and unambiguous," the court felt "no need to consider legislative history." *Id.* at \*5 n.3.

In *Simpson v. Vantage Hospitality Group, Inc.*, No. 12-cv-04814-YGR, 2012 WL 6025772 (N.D. Cal. Dec. 4, 2012) (Rogers, J.), the district court addressed the question whether section 632.7 is limited to third parties.  The court rejected the defendant's argument as follows:

"Here, the Court finds that there is no ambiguity in the language of Section 632.7 and that Defendant's proffered interpretation effectively eliminates the words 'or' and 'receives' in their entirety. While the common understanding of 'intercept' (*i.e.*, 'to stop, seize, or interrupt in progress or course or before arrival') contemplates the existence of a third party (Webster's Ninth New Collegiate Dictionary ("Webster's") at 630 (1988)), the same is not true of "receives," which very broadly means "to come into possession of." (Webster's at 982.) Because the inclusion of "receives" is presumed to have been purposeful, the Court must apply the statute as written and using the term's plain (and broad) meaning.  Further, the use of 'or' also has plain meaning-it is disjunctive and expresses that

either alternative of 'intercepts' or 'receives' will suffice. (See Webster's at 829.) Because the Court applies each part of "intercepts or receives" by its plain meaning, *it must reject Defendant's argument that the statute can only apply to third parties*.  No persuasive reason has been presented why Defendant did not 'receive' Plaintiff's communications in the ordinary sense."

*Simpson v. Vantage*, 2012 WL 6025772, at *6 (emphasis added).

Finally, in *Simpson v. Best Western Intern., Inc.*, No. 3:12-cv-04672-JCS, 2012 WL 5499928 (N.D. Cal. Nov. 13, 2012) (Spero, Mag. J.), the district court similarly addressed the question whether section 632.7 is limited to third parties.  Although the district court in *Simpson* disagreed with the *Brown* court's analysis of whether § 632.7's language is clear and unambiguous, 2012 WL 5499928, at *7, the *Simpson* court ultimately agreed with the *Brown* court's analysis rejecting the defendant's assertion that section 632.7 is limited to third parties.  *Id.* at *9.  The *Simpson* court stated:

"With the Legislature's intent in mind, § 632.7 may fairly be read to apply to parties to the communication, as well [as to] third parties.  Section 632.7 imposes penalties on '[e]very person who, without the consent of all parties to a communication, *intercepts or receives* and intentionally records' a cellular or cordless communication.  Cal. Penal Code § 632.7(a) (emphasis added).  While the word 'intercepts' is most naturally interpreted to refer to a third party who accesses the communication, the word 'receives' is much broader.  Under an ordinary use of the word, each party to a conversation 'receives' communications as they hear the words spoken to them from the other party.  This is the interpretation of the word 'receives' the Court adopts today." . . .

As explained above, the Court finds the word 'receives' in § 632.7 to be ambiguous, as it has many potential interpretations.  However, the Legislature intended to extend the protections against recording landline conversations—

which applied to parties—to cellular communications.  Interpreting § 632.7 to only apply to third parties would defeat the Legislature's intent.  Therefore, the Court finds that § 632.7 applies to parties to the communication as well as third parties.  Accordingly, Defendant's Motion to Dismiss is DENIED."

*Simpson*, 2012 WL 5499928, at *9.

Thus, regardless of whether the Court interprets the language in section 632.7 as ambiguous or not, this Court should follow the reasoning in the foregoing cases, and find that section 632.7 is not limited to third parties.

### 3.   The Rule of Lenity Does Not Apply in Construing the Civil Sanction At Issue In This Case.

Although Defendant has referenced the rule of lenity merely because the invasion-of-privacy statutory scheme appears in the Penal Code, Defendant ignores that the statutory private right of action at issue, Penal Code section 637.2, does not seek to impose any penal sanctions (*i.e.*, criminal punishment) for violation of the statute scheme.  In *Kearney*, the California Supreme Court drew a sharp distinction between the *civil* sanctions sought via Penal Code section 637.2 and the *penal* sanctions sought in the statutory scheme as follows:

"Although the invasion-of-privacy statutory scheme appears in the Penal Code and the Legislature chose to impose penal as well as civil sanctions for conduct that is prohibited by the legislation, in determining the scope of the civil cause of action embodied in section 637.2, we properly must consider the *substance*, rather than the *form*, of the statutory scheme.  The reach of section 637.2 would be the same if the Legislature had adopted three separate statutes—one declaring that the prohibited conduct was unlawful, a second specifying the civil sanctions that could be imposed upon such unlawful conduct, and a third specifying the penal sanctions that could be imposed for such conduct—and had placed the first two statutes in the Civil Code and the third in the Penal Code.  As noted above, the issue presented here is whether plaintiffs may maintain a civil cause of action

for damages and/or injunctive relief under 637.2 on the basis of the facts alleged in the complaint, and in resolving that issue there is no need to determine whether penal sanctions properly could or should be imposed under these circumstances. In accordance with traditional notions of judicial restraint, we believe it is appropriate and prudent to wait until we are faced with an instance in which a prosecutor had chosen to charge a criminal offense on the basis of such conduct before addressing the legal issues that might be raised in such a prosecution."

*Kearney*, 39 Cal. 4th at 116 n.6 (emphasis added). Given that there are no penal sanctions at issue in the instant action, this Court should follow the persuasive reasoning in *Kearney* to avoid determining whether penal sanctions properly could or should be imposed under these circumstances.

**D.** **The Court Can and Should Infer that Plaintiff Has Adequately Alleged that Plaintiff Suffered an Injury to Her Right to Privacy Under California's Invasion-of-Privacy Statutory Scheme.**

Defendant argues that the Complaint fails to state a claim because there is no allegation that Plaintiff suffered an injury as a result of Defendant's wrongful conduct. Not so. The Complaint alleges, "Plaintiff expected that her telephone call would be private (i.e., neither recorded nor monitored) due to Defendant's failure to disclose any recording or monitoring. (Compl. ¶ 11.) Given that the Complaint has alleged a violation of § 632.7 and pled a cause of action under § 637.2, it's clear that the Complaint has alleged that Plaintiff's right to privacy was violated by Defendant's wrongdoing. Accordingly, this Court, taking the allegations in the Complaint as true, can and should infer[5] that Plaintiff was injured by being deprived of his right to privacy,

---

[5] "All reasonable inferences from the facts alleged are drawn in plaintiff's favor in determining whether the complaint states a valid claim." The Rutter Group, *Federal Civil Procedure Before Trial* ¶ 9:213, at 9-77 (2012); *Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir. 2009) ("we must draw inferences in the light most favorable to the plaintiff") (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. 2d. 2d 90 (1974)). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's

Continued on the next page

which is protected not only by the invasion-of-privacy statutory scheme, but also by California's right to privacy enshrined in the California Constitution. *Kearney*, 39 Cal. 4th at 125 (noting that "California's explicit constitutional privacy provision (Cal. Const., art. I, § 1) was enacted in part specifically to protect Californians from overly intrusive business practices that were seen to pose a significant and increasing threat to personal privacy"). Indeed, Defendant's analysis is nonsensical. Defendant attempts to draw a distinction between the request for injunctive relief, on one hand, and a request for either statutory damages of $5,000 or three times the amount of actual damages, on the other hand, by asserting that "injury is not required to bring an action for injunctive relief." (Mot. Judgment at 14:15-16.) If that statement were true, that would mean that a plaintiff could have standing to sue for injunctive relief without making any allegation at all that such plaintiff was injured by the alleged wrongdoing at issue. Such position clearly contradicts the well-established interpretation of the U.S. Supreme Court regarding standing to sue for injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) ("Abstract injury is not enough.") (holding that the plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical"). To the extent that the Court agrees with Defendant's position, leave to amend should be granted to expressly plead that Plaintiff sustained an injury resulting from Defendant's violation of Plaintiff's right to privacy.

Dated:  July 15, 2013                    NEWPORT TRIAL GROUP, APC


                                         By:  */s/Scott J. Ferrell*
                                              Scott J. Ferrell
                                              Attorneys for Plaintiff
                                              CUIARA BRAY

---

Continued from the previous page
complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on July 15, 2013, I electronically filed the foregoing

3

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

4

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION**

5

**FOR JUDGMENT ON THE PLEADINGS** with the Clerk of the Court using the

6

CM/ECF system which will send notification of such filing via electronic mail to

7

all counsel of record.

8

9

    */s/Scott J. Ferrell*
    Scott J Ferrell

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28